May it please the court, Deanne Maynard for the Lummi Nation. I'd like to reserve three minutes of time for rebuttal. All right, I'll watch the clock. I'll try to help you as well. Thank you very much, Your Honor. The requesting parties failed in their burden. They had to show there was no evidence before Judge Bolt from which he could have concluded that the Lummi fished in the disputed waters at issue. But there was ample evidence before Judge Bolt from which he could have so concluded. After all, these waters lie directly south of the territory where the Lummi's historic villages were on the San Juan Islands. And they lie directly between waters that are undisputed Lummi usual and accustomed fishing grounds. Namely, the waters of the San Juan Islands to the north, including Haro and Rosario Straits, and the waters of Admiralty Inlet to the south. Under the rationale this court applied to conclude that Admiralty Inlet is within the Lummi's UNA, that logic applies equally or greater here. The district court should be reversed, and judgment should be entered in favor of the Lummi. I'd like to start by talking about the evidence that Judge Bolt cited in finding of fact 46, when he concluded that the Lummi's UNA included the marine areas of northern Puget Sound from the Fraser River south to the present environs of Seattle. First, he relied on Dr. Lane's report. He cited the portions of her report that are on ER 127 to 131 of this record, where she first lays out the home territory of the Lummi. And she states the home territory of the Lummi includes waters throughout the San Juan Islands, including Haro and Rosario Straits. She then goes on and she says, in addition, in addition to those home territories, and I'm quoting now from ER 130, Lummi fishermen were accustomed, at least in historic times and probably earlier, to visit fisheries as distant as the Fraser River in the north and Puget Sound in the south. And if one looks at the map that was before Judge Bolt, USA 62, it's reproduced on page 13 of our brief, one can see that if she's first described the waters of the San Juan Islands, including Haro and Rosario Straits, as the home territory, and then Judge Lane goes on to say, in addition, they included waters to the south in Puget Sound, that necessarily includes these waters. That alone is some evidence before Judge Bolt. You obviously heard the last argument and where Ms. Rasmussen left off was exactly this point of travel alone is not sufficient. So my question here is, traveling from these respective areas to Puget Sound and the south, how do we know that it's not just travel as opposed to an occasional trawling as opposed to actual fishing? Well, so two points, Your Honor. This court, on the travel point, this court has on multiple occasions held that while incidental travel is not enough, more frequent travel is enough. This court so held in Upper Skagit in this court's conclusion that Admiralty Inlet was within the Lummi UNA as well. So while the incidental trawling and travel rule is a rule this court has identified, it has also held that more frequent travel is sufficient. But the evidence that I'm pointing to here, Your Honor, I think is not just of travel. It is of fishing. So Dr. Lane goes on to say, on ER 131, Lummi used fisheries in the straits and bays from the Fraser River south to the present environs of Seattle. So what we're trying to conclude here is what Judge Bolt meant. So Judge Bolt's finding of fact 46 describes the Lummi's usual and accustomed fishing grounds. He finds as fact that it includes the marine areas of northern Puget Sound from the Fraser River in the north, south to the present environs of Seattle. And what would he have understood that to mean? And would he have understood that to be a continuous UNA? And I have two points that I think show that in addition to Judge to, sorry, to Dr. Lane's report. The first is a 19th century affidavit that the district court did not address, where it is reprinted at ER 181 and 82, where the affiant says he's lived among the Lummi for many years. And they, quote, fished at all points in the Lower Sound and wherever the run of fish was greatest. So that's more than evidence, Judge McCune, of travel. That's evidence of fishing. And then the map that was before. May I just ask one factual point? I think on that particular affidavit, he received his information after the treaty was signed, but you're asking us to interpret it as that it's in and around the treaty time. That's right, Your Honor, and I think there's good reason to do that. So first, again, one, Judge Bolt cites that as support for his finding of fact 46. He cites that particular affidavit. It's the affidavit W that he cites in finding of fact 46. So he relies on it. And the question, again, under this Court's precedent is whether there was evidence before Judge Bolt from which he could have inferred fishing at or before treaty times. And certainly from a trader who says shortly after treaty times, to be sure, but that he's lived among the Lummi for many years and known them to fish throughout this area, a judge could infer from that evidence and make the finding that the Lummi did so at treaty times. The question, again, before this Court is whether there's some evidence before Judge Bolt to support the conclusion that these waters, these waters which lie immediately to the south of where Judge Lane, I'm sorry, I keep calling her Judge Lane, where Dr. Lane said that the Lummi's territorial homes were in the San Juan Islands and where she said, in addition, they had fisheries to the south. This is the south. So there is evidence of fishing. On the point about the map and where Judge Bolt would have understood the Strait of Juan de Fuca to end, because this is a big point the other side makes, the map, again, is reprinted on page 13 of our brief, and it's ER 260. When one looks at that map, the Strait of Juan de Fuca is way to the west. The label for Juan de Fuca is way to the west. The contemporary understanding at the time Judge Bolt ruled of what a strait is is a narrow passageway connecting two larger bodies of water. And the only way this can be a narrow passageway connecting two larger bodies of water is if the strait ends somewhere to the west of the disputed territory here. So where does it end? Somewhere east of Fort Angeles. Somewhere to the west. So if you have our blue brief on page 39, our opening brief, it shows a reproduction of ER 260 in total, but it marks an arrow. So there's an arrow marking the Strait of Juan de Fuca, and there's an arrow marking Trial Island, which is a very small island the way this map is. And that's where the beginning of the line, the line that's at issue now runs from Trial Island, which is the southernmost point of Harrow Strait, which is Harrow Strait is undisputed. It's within the Lummies' usual and accustomed fishing grounds. If one draws a line straight from Trial Island, that red arrow, down to the southern border of Admiralty Inlet, a straight direct route between those two points, Admiralty Inlet, again, has been concluded by this court to be within the Lummies' usual and accustomed fishing grounds, the direct route between these points, and then bordered all on the north with Rosario Strait and Harrow Strait and all the waters of the San Juan Islands that are, again, undisputed Lummie territory. So to answer – go back to your question, Judge McKeon. I guess you're saying you can't count, say, for example, southern Lopez down to Admiralty Inlet because it's too wide, it's not narrow? Well, to be – to be – all over the map, so to speak. Well, to that point, Your Honor, the important map is the map cited by Judge Bolt in finding of fact 46, and that is this map, the map that I'm pointing you to. The map that they've passed out here is a map that isn't a map that was before Judge Bolt and isn't – and if one looks at other maps that weren't before Judge Bolt, you know, the Strait of Juan de Fuca label is in lots of different places and points conflicting ways. But what this Court has held is the most relevant evidence for determining what Judge Bolt would have thought, and this is what the Court held in Muckleshoot 3, the most relevant evidence is the evidence that Judge Bolt cited himself. And this is a map he cites in finding of fact 46. And it would show – back to your original point, Judge McKeon, which is where does the Strait of Juan de Fuca end? At some point, it doesn't exactly matter precisely where it ends for this case because it ends well to the west. On this map, it's shown well to the west of the line. If you go from Trial Island, the arrow there, the red arrow, draw a line straight down to the southern tip of Admiralty Inlet. And the rationale this Court used to find Admiralty Inlet within the Lummi UNA, which is the Lummi did frequently travel. They would have frequently traveled between these two points. Barbara Lane's report states that these Indians, and this is on ER 130, so it's within the Lummi UNA description, so I grant you it says these Indians includes a broader group of Indians, but it clearly includes the Lummi, and it's within this portion cited for finding of fact 46. Barbara Lane says that these Indians traveled widely and frequently throughout the waters of the Sound and Straits, as commented on by numerous early observers. And so the rationale that this Court used to conclude that the waters of Admiralty Inlet, which would be a necessary passage that as the Lummi fished from Fraser River in the north to the environments of Seattle in the south, that that would have been a continuous area, that USA 62 shows that Judge Bolt would have understood these waters to be within it, that the affidavit from the 19th century trader who says they fished throughout the Sound, from Dr. Lane's report where she says they have the home territory in the San Juan Islands and in addition to the south, that is ample evidence for this Court to conclude that these waters are within the Lummi's UNA. I would before... Just ask another question. Maybe this is obvious to you all. Where do the waters west of Whidbey Island end, or does that matter? In my view, Your Honor, the question before that, it doesn't really matter, the answer to that question, because in some ways it also doesn't matter like where does the Strait of Juan de Fuca end. The question before this Court is the dispute that's been placed at issue are the waters I was just describing from Trial Island down to the southern tip of Admiralty Inlet and then northeast of that. The question for this Court is could Judge Bolt have concluded that these... That segment. That these waters in dispute were within the Lummi's UNA, and if the answer to that question is yes, then you have to reverse and enter judgment for the Lummi. And before I sit down just so that I don't catch them unfairly on rebuttal, we do have an alternative argument. We think this is the right way to resolve this case, and this would put an end to it and hold these waters were within. But if they weren't within, then we would like this Court to make clear that the Lummi's still have a chance under Judge Bolt's order to put in new evidence to show that these should be included within the Lummi's usual and accustomed fishing grounds, and to the extent the judge suggested otherwise, that was legal error. Thank you. Thank you. So we now have Port Angeles and the Clallam Tribe are splitting. Is that correct? Yes, Your Honor. May it please the Court. Lauren Rasmussen again for the Port Campbell's Clallam and Jamestown's Clallam Tribe. To answer a question posed, it absolutely does matter because we've been here twice on the question of what is the Lummi's in northern Puget Sound from Fraser River to the present environs of Seattle. And in order to answer this question, you have been told repeatedly that the most direct route is a 123-mile detour through the Strait of Juan de Fuca where salmon were most easily taken, according to the affidavit, is where Lummi fished. Never have I heard it said that salmon are most easily taken in the open waters of the Strait of Juan de Fuca. In addition, one thing that should be clear under CASER 48, which I set up there, is Lummi is actually not coming under the record from Admiralty Inlet. They're coming from the present environs of Seattle, which is on the east side of Whidbey Island at Edmonds. And that was found in the Muckleshoot case, the present environs of Seattle. And they're going north to Lummi, above Lummi, which is the Fraser River, which is also on the east side. And all of Lummi's references in the report are to the bays on the mainland. Dr. Lane said they speared fish on the bays of the mainland. And as this Court can recall, in the Upper Skagit v. Suquamish case at 590 F3D 1020, this is the Upper Skagit case in the reverse. In that case, Suquamish was arguing they were coming up the eastern passage. Well, Lummi seems to forget to tell the Court there's two ways to skin this fish. There is two ways up to the San Juan Islands from the present environs of Seattle. One way is the 123-mile detour that they've proposed, which gets them an additional 310 square miles of the Strait of Huanufuca. And the other more likely path is through waters aptly named as Saratoga Passage and Deception Pass. This is the inside passage that Suquamish was trying to seek from the Snohomish River areas that they claimed as their UNA. And the Court said no. The Court said, you know, like I said, there was a prior panel that went with this more likely than not and just added the areas because they were in between. And then the panel reversed on rehearing and said, now wait a minute, we have to look at the record under Muckleshoot 1, 2, and 3. As a side note, I think I know why the panel was having trouble. The Lummi 1 decision, as Your Honor may recall, was issued on the same day as two of the Muckleshoot decisions. So the whole law of the case on how to look at the record in front of Judge Bolt had not fully been developed, and the record the Court was looking at in Lummi was not issued in accordance with Muckleshoot 1, 2, and 3. Judge's COIL 1990 decision was based on trying to get to the intent of the Court, but it didn't apply in Muckleshoot 1, 2, and 3 because they didn't exist yet. So now we fast forward, and it is our position that the only way that this case is consistent with Upper Skagit and the Tulalip case at 794 F3D 1129 is that we have to look at the record and see if there are actual references to phishing. Now compare the Lummi's claim... I just want to stop for a second. Sure. Because I'm looking, you know, where is Edmonds, just north of Seattle? Yes. And you're saying, well, it would have made more sense to go up through Saratoga Pass and then through Deception Pass. Yes, and Lummi does claim that area as their UNA. I understand, but also if their Admiralty Inlet is, and we're bound by the determination that Admiralty Inlet is included in the UNA, if it's equally likely or possible, I guess you have to determine which of these standards you're using, but to go this way and this way, you're suggesting we can't really count going through Admiralty Inlet. I'm saying Admiralty Inlet isn't one of the geographic markers in Finding of Fact 46. Finding of Fact 46 has the present environs of Seattle as the southern terminus point. I understand, but we now have, through this case law, Admiralty Inlet is a fact that we deal with, right? Yeah, Admiralty Inlet is a fact you deal with, much like Snohomish Bays that Suquamish has also on the east side of Whidbey Island. So remember, Suquamish was in the same position. They claimed areas on both sides, and yet the court had to make a call which way it decided they went. Now, Suquamish had testimony that they fished through the Strait of Juan de Fuca, and I'll get to the point about how absurd it is to claim this isn't the Strait of Juan de Fuca when this court has already recognized that Suquamish passed through the Strait of Juan de Fuca to get to the San Juan Islands, and if we move the Strait of Juan de Fuca 17 miles to the east, a request by Lummi, it creates a ridiculous set of circumstances in terms of the case law. So in terms of the upper Skagit decision, this is exactly the upper Skagit decision. You're looking at the record, and you're saying, I have no references. And in our case, we have a specific intent to exclude in the record. So Lummi wants to traipse out this map that was cited in Finding a Fact 46 as the only map in the record of Judge Bolt's intent. But Dr. Lane had a map in her report at ER 129 in the section on Lummi Usual and Custom Fishing Grounds and Stations, and this map, Your Honor, contains a key where it has a reef net. It says reef net grounds, and this is not a reef net ground in the middle of the Strait of Juan de Fuca. This is the key. You will note that on this map, Whidbey Island is on the map right smack in the middle. Dr. Lane, the expert in this case, does not place a reef net site on Whidbey Island. That is an evidence of an intent to exclude the area. In addition, this court has held in upper Skagit when there are specific geographic anchors. Oh, sorry. If there's no reef net site there, why is it then that somehow on the eastern side of Whidbey that that is the accustomed area? Well, we're not answering the question. Because it seems to me that doesn't answer either question. So that's my concern. Yeah, so the concern is, is that what – how is it that you're supposed to prove that someone didn't fish there? And I posit the question as we look at the record under Muckleshoot 1, 2, and 3, and we see if Dr. Lane indicated an intent to include that area in their UNA. And all she has is a broad general description, which this court has held twice, was ambiguous. Now, Lummi wants to use that ambiguous description as the piece of evidence that includes this area. And we say this court has no evidence to support that conclusion. But in addition, this court has held that specific geographic anchors are important. And in the Swinomish case, which is not final decision number one, but was 1975 as opposed to 1974 where the court found UNA for the Swinomish tribe, up to and including Whidbey. So we have Dr. – we have Judge Bolt knowing how to use Whidbey Island when he intended to include it, specifically calling it out. We have Lummi at LSER 20 admitting in the lower court that west of Whidbey Island was a specific – Okay, well, your time is up, but I have one last question. So are you saying that in your view the waters east of Whidbey Island are established because that would be the route one would get from Seattle to the north? If you're going to follow the argument of making a continuous route, the shortest possible route, 68 miles versus 120, I would say that it's much more likely that they took the inside passage in areas they also claim.  May I sit down? Thank you. So you have seven minutes. Thank you, Your Honor. Good morning. May it please the court. I'm Steve Swagey for Appellee Lower Elwha-Klallam Tribe. I think we are – I want to focus on the second step of the Muckleshoot two-step analysis, which requires the Klallams to show that there was no evidence before Judge Bolt of regular treaty time fishing by lummie in the waters west of Whidbey Island or frequent travel en route to fishing grounds. I don't want to be redundant of what Ms. Rasmussen has said, but I'll probably have to bring up a couple of points to put in perspective what I'm going to say. And I don't have a lot of time – I won't have a lot of time later, so I just want to know – Why don't you get to what your point is that might be different from hers? Sure. Because we've read all the briefs. Okay. Well, I think one point about the Court's two decisions since 2000, where in both cases this Court has affirmed Judge Martinez's application of the two-step process. In the more recent of the two, the 794 Fed Third case, there was an affirmance of a finding of UNA because that finding was based on very specific evidence in the Judge Bolt record from Dr. Lane. There's a reference in this Court's decision that there was also general evidence that also supported affirmance of Judge Martinez, but I think it's very clear Judge Martinez did not rely on that general evidence and that this Court's decision in 794 Fed Third does not stand for the proposition that general evidence alone is enough to sustain a finding of an intent by Judge Bolt to include an area in a tribe's UNA. The 841 Fed Second case of this Court back in 1988, which Lumme relies on for the lenient standard of proof, and it is a lenient standard of proof, but I don't think it's quite as lenient as Lumme suggests. I think it's important to note that in that case, this Court was affirming, was reviewing Judge Craig's initial determination after trial of a UNA finding and applying a clearly erroneous standard to Judge Craig's finding of historical fact. Judge Craig made an inference from some specific historical testimony from Dr. Lane, including at one point an inference that she herself was unwilling to make when she provided her testimony, and this Court said that's not clearly erroneous to have done. So I think there's a difference when we're dealing with a case now where we're looking at what did Judge Bolt intend when he made his decision. There's no indication in our record that Judge Bolt made the same kind of inference that Judge Craig did or that Barbara Lane made any similar inference or provided any specific evidence of Lumme fishing or travel for fishing in the waters west of Whidbey Island. So I would like to comment a little bit on the Lumme evidence. There's four pieces. Taking first the map at USA 62 at ER 260, it's not evidence of fishing or travel in these waters. It was offered in 1974 to Judge Bolt to show one reef net site. It wasn't offered to show the location of water bodies or pointed out to Judge Bolt for this purpose, although that's what Lumme argues that it shows now regarding the difference between the Strait of Juan de Fuca and northern Puget Sound. They have to add colored arrows at seven different points in their briefs to try to make that point to this court that no one made to Judge Bolt in 1974. Even if this were some evidence that this is northern Puget Sound rather than the Strait of Juan de Fuca, it's hard to understand how that helps. Under the two-step process, we need evidence of fishing or travel. All this shows is that perhaps it's northern Puget Sound, and we wouldn't agree that it shows that. But that sort of cuts against Lumme because it really supports the idea that the waters west of Whidbey Island are part of the waters that Judge Bolt has specifically determined, albeit without recognizing them as UNA. Turning to the 1898 affidavit, which wasn't discussed by Judge Martinez, it's not evidence of fishing in the waters west of Whidbey Island, even at the time that it was given 40 years after the treaty. It includes statements that Lumme Indians fished at all points in the Lower Sound, including Point Roberts. All the references to location in that affidavit are areas to the north of these waters, which are part of the Lumme homeland. Judge McEwen, you were interested and asked a follow-up question about this declaration. I think it's important to note Lower Sound in this declaration is used in the watershed sense, not in the sense of cardinal directions, which is consistent with Judge Bolt's terminology in Decision 1, where he described the Squaxin Island tribes, UNA, which is in the southern Sound near Olympia, as being within upper Puget Sound. We've got that discussion in our brief. Dr. Lane had a report on the Lumme at USA 30. All the references in this report, again, are to Lumme fishing north of the waters west of Whidbey Island in their home territory, with the exception of the reference to the vicinity of Edmonds or Straits and Bays somewhere, no specificity between there. The waters west of Whidbey are neither a strait nor a bay. Then this question of evidence of travel, which is also derived from Dr. Lane's report, the reference at ER 130. Are you now talking about the waters west of northern? Correct. That's the area in dispute. On the map I have, it says area 23B. Well, that map, let me talk about that for a minute. There's various 23B, 23A, 7, and 6A. This map that Ms. Rasmussen passed out is really offered not to comment on the Bolt record per se. The crosshatching is simply the area. We wanted to identify the area that's in dispute. I just want to know what you're talking about. I think we're on the same page. Thank you. Okay. Well, I've run out of time here, so I reckon I'm done. Thank you very much. Thank you. We have some time for rebuttal. Thank you, Your Honor. It's clear from this Court's precedent that no specific reference to particular localities is required for the Court to find it within the U of A. This Court expressly rejected that when it concluded Admiralty Inlet was within the Lummies UNA. There was similarly no reference to Admiralty Inlet as a separate body of water in Decision 1, just as there is no separate reference in Decision 1 to the waters west of Whidbey Island. That's not the question. The question is, what did Judge Bolt mean when he said that the Lummies UNA in Finding Effect 47 includes the broad area? It included the marine areas of northern Puget Sound from the Fraser River south to the present environments of Seattle. From and to. That connotes, the normal meaning of that is all the waters in between. He never indicated, and this Court has never affirmed, a discontinuous UNA, which is what they want you to hold here. These waters could just as easily be called the waters south of the San Juan Islands, and there is a marker, a geographic marker, in the findings of Fact 45, where Judge Bolt finds that the waters of the San Juan Islands are within the Lummies' home territory. And then in Finding Effect 46, he goes on to say, in addition, there are these marine waters. These waters are within that in addition. It is the direct route between Harrow Strait and the mouth of Admiralty Inlet, which has already been held to be within the Lummies' UNA, is a short distance. This is a very small area that we're talking about. Immediately, it's the Lummies' front yard. And this Court should reverse and hold these waters within the Lummies' usual and accustomed fishing grounds. This Court has no further questions. Thank you. Thank you. The case of the Lower Elwha v. the Lummies is submitted. And I will say this was true in the previous case as well as here. I think the arguments have been excellent, and the briefing has been very excellent on all sides in these cases.
judges: Hawkins, McKeown, Foote